IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL SHALAN<br>13901 Harold Avenue<br>Cleveland, Ohio 44135<br><br>  Plaintiff,<br><br>  v.<br><br>THE METROHEALTH SYSTEM<br>2500 MetroHealth Drive<br>Cleveland, Ohio 44109<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR**<br>**INJUNCTIVE RELIEF AND**<br>**DAMAGES**<br><br>**(Jury Demand Endorsed**<br>**Hereon)** |

Plaintiff, Jamal Shalan, by and through undersigned counsel, as his Complaint against Defendant, The MetroHealth System, states and avers the following:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 for the Plaintiff's claims arising under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

2. Venue is properly in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because (a) the Defendant is located in this judicial district, and (b) a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district.

### PARTIES

3. Plaintiff Jamal Shalan is a resident of the city of Cleveland, county of Cuyahoga, and state of Ohio.

4. Shalan is deaf and communicates in American Sign Language ("ASL") and is therefore a qualified individual with a disability under the Rehabilitation Act and the Americans with Disabilities Act.

5. At all times material, Defendant The MetroHealth System ("Metro") was and is a corporation and/or other legal entity duly organized and existing pursuant to the laws of the state of Ohio, and operated health care facilities located in Cuyahoga County, Ohio, and held itself out to the public, including Plaintiff, as a provider of medical care services.

6. Metro owns and operates the MetroHealth Medical Center located at 2500 MetroHealth Drive, Cleveland, Ohio 44109.

7. Metro is a recipient of federal financial assistance, and is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## FACTUAL ALLEGATIONS

8. Shalan incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

9. On or about March 28, 2017, Shalan sustained a serious foot injury.

10. Shalan was experiencing severe pain in his foot and was having trouble walking.

11. Shalan went to MetroHealth Medical Center for treatment of his serious foot injury.

12. Upon entering MetroHealth Medical Center, Shalan informed Metro that he was deaf and would need a live interpreter or Video Remote Interpreting ("VRI") in order to communicate with the health professionals and understand the diagnosis and treatment options for his foot.

13. The fact that Shalan is deaf was also clearly noted in Shalan's medical records, which were readily available to Metro staff.

14. Despite the availability of many ASL interpreters in the Cleveland area, Metro refused and continues to refuse to retain ASL interpreters for its deaf patients.

15. Shalan was left waiting for over two hours with no indication on what was causing the delay in receiving medical treatment.

16. After the two-plus hour delay, Metro attempted to communicate with Shalan using VRI.

17. The VRI continually froze, which made communication between Shalan and the health care professionals impossible.

18. Shalan was unable to describe information pertaining to his foot injury, including where the pain was and his range of motion.

19. This information was vital in providing Metro health care professionals the opportunity to properly diagnose and treat Shalan's foot injury.

20. Metro attempts to use VRI, however, its staff is not trained on how to use this equipment, and/or the video connection is inadequate to obtain a clear signal to effectively communicate.

21. After the VRI proved to be non-operational, Shalan was not provided with a live interpreter.

22. After spending hours at MetroHealth Medical Center, Shalan was discharged without an understanding of what was wrong with his foot or the prognosis of his injury.

23. Based on the limited amount of information he thought he understood from the Metro doctor, Shalan was under the impression that his foot would be fine in two days.

24. Shalan was not communicated any instructions on what exactly was wrong with his foot or if he should undergo any treatment to ensure his foot would heal.

25. Because Shalan was denied the opportunity to effectively communicate with Metro health care professionals, his foot injury was misdiagnosed.

26. After nearly a month went by after his MetroHealth Medical Center visit, Shalan was still experiencing severe pain in his foot.

27. Shalan decided to go to a different medical provider to ensure that he would be able to effectively communicate through a live interpreter or functional VRI.

28. Shalan was shocked as he was diagnosed with a broken foot and gout in the broken foot.

29. Shalan was told there would be no way that the foot would heal without a protective boot.

30. Shalan was told by his subsequent health care provider that a simple blood test would have revealed that Shalan was suffering from gout.

31. Because of the lack of effective communication, and Metro's failure to provide a live interpreter or functioning VRI, Shalan had no idea he was suffering from a broken foot or gout.

32. Because of the lack of effective communication, and Metro's failure to provide a live interpreter or functioning VRI, Shalan's broken foot and gout worsened between the time Shalan was misdiagnosed by Metro and properly diagnosed by another health care provider that was able to effectively communicate with Shalan.

33. If Shalan would have been able to communicate with the health care professionals at MetroHealth Medical Center, Metro would have been able to diagnose Shalan's gout through a blood test and his broken foot through an x-ray.

34. The discrimination against Shalan was intentional, with reckless disregard, and with deliberate indifference to his protected rights.

35. Shalan previously visited Metro on numerous occasions to treat a recurring heart condition.

36. Metro also failed to provide an interpreter at previous visits regarding Shalan's heart condition

37. Shalan's numerous visits to MetroHealth Medical Center over the past five years demonstrates the existence of varying and ongoing medical issues, some of which require continued treatment.

38. MetroHealth Medical Center is in close proximity to Shalan's home, and because of his continuing need for treatment for the complications related to his foot injury and his heart condition, it is certain he will have to return in the near future.

39. Shalan wants to have effective communication through a qualified sign language interpreter at MetroHealth Medical Center and other Metro facilities during his future visits in order to ensure that he receives adequate care.

40. Metro has a pattern and practice of not providing Shalan with a qualified sign language interpreter and using VRI which staff does not know how to use and which only functions properly sporadically.

41. In order to receive Medicaid funding, Metro is required to develop policies and procedure that ensure that persons who are deaf or hard of hearing will receive adequate and effective communication.

42. Each time Metro recertifies for Medicaid funding, it promises that it will provide and adhere to such policies.

43. Upon information and belief, Metro has not provided proper training on the treatment of patients who are hearing impaired.

44. While Metro has access to qualified interpreters in person and video interpreting services, upon information and belief, Metro staff have not had proper training on when they must utilize a qualified interpreter, nor is the process streamlined to ensure interpreting services are easily obtained in a timely manner.

45. Upon information and belief, Metro staff have not been trained on effective communication with the deaf of how to use VRI, and the machines are not kept in working order.

46. Metro does not inform hearing impaired persons of the services that are available for the deaf and hearing impaired, and did not inform Shalan of the availability of these services.

47. Shalan was also not provided with any brochure or other information on the availability of interpreters during any of his visits to Metro.

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701 et seq.

48. Shalan incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

49. Shalan is deaf and his disability substantially limits one or more of his major life activities, including his ability to effectively communicate with others who are not fluent in ASL.

50. Shalan is therefore considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended.

51. Metro is a recipient of federal financial assistance by virtue of receipt of Medicare and Medicaid payments, as well as other financial assistance.

52. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to be otherwise discriminated against.

53. During Shalan's past years of appointments at Metro, staff noted during each appointment that Shalan is deaf and communicates through sign language.

54. The doctors, nurses, and all other employees and staff of Metro who interacted with Shalan had actual knowledge of his disability, yet, Shalan was consistently denied any form of effective communication.

55. By not using a qualified interpreter, Metro does not explain the risks of the procedures, nor permit a deaf patient to ask questions or to have a real understanding of the course of treatment.

56. Because of the failure to provide effective communication, a deaf patient has an incomplete understanding of what is happening during each appointment.

57. Shalan was deprived of the opportunity to ask all questions he had, and to gain meaningful answers.

58. Shalan left feeling frustrated and mistreated after his appointments and emergency visit at Metro.

59. Shalan has signed numerous forms while at Metro, without a qualified interpreter present to communicate the information to him, and as a result, Shalan did not fully understand what he was signing, or what treatment he was receiving at Metro during his visits.

60. Shalan was not properly informed of the treatment plans, medication risks, and follow up procedures, nor given the opportunity to ask questions that any other non-hearing impaired person would act.

61. Metro staff indicated awareness that Shalan was deaf and only communicated using sign language, needed an interpreter, and noted difficulties with obtaining medical history from Shalan when not using a qualified interpreter, but despite this, Metro failed to communicate with Shalan through a qualified interpreter during at least a portion of all of his visits.

62. Accordingly, Metro discriminated against Shalan in the equal use of its facilities, and as a result, Shalan experienced mental anguish and humiliation in violation of his civil rights.

63. Metro failed to provide services to Shalan as it would have provided a similarly situated hearing patient.

64. Metro's policies, practices, and procedures, particularly the actions and omissions described above, violated Shalan's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

65. Metro has discriminated against Shalan by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are deaf or hard of hearing in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

66. At all times material to this case, the employees, staff, and agents of Metro would have been able to communicate effectively with Shalan, including obtaining accurate history and giving instructions, if Metro had provided qualified interpreter services.

67. Metro staff knew that Shalan would be harmed by their failure to provide an interpreter.

68. Shalan was harmed by Metro's failure to provide an interpreter in that Metro failed to properly diagnose Shalan's broken foot and gout, which caused a worsening of Shalan's medical conditions.

69. Shalan was harmed by Metro's failure to provide an interpreter in that Metro failed to properly diagnose and treat Shalan's broken foot and gout, which caused extreme physical pain and suffering for a long period of time.

70. As a result of Metro's actions, Shalan has been damaged and has suffered physical injuries and experienced emotional suffering, pain, and anguish.

71. Metro's actions were intentional, with reckless disregard, and with deliberate indifference to the rights and needs of Shalan.

72. Shalan will continue to face discrimination at Metro, as Metro is located in close proximity to Shalan.

73. Shalan plans to return to Metro for care for his heart condition, foot injury, and gout, and will likely continue to be denied an interpreter.

**WHEREFORE,** Shalan respectfully prays that this Court grant the following relief against Defendant, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's practices, policies, and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act, and permanently enjoining the Defendant from any practice, policy, and/or procedure which will deny Plaintiff equal access to and benefit from the Defendant's services, or which deny Plaintiff effective communication with the Defendant. This includes entering a permanent injunction ordering the Defendant:

a. To immediately begin providing Shalan with an interpreter to ensure he receives adequate healthcare for the duration of his heart condition, foot condition, gout, and any other medical issues;

b. To cease discrimination against Shalan and all other deaf or hard of hearing patients;

c. To promulgate and comply with policies and procedures to ensure that the Defendant and its staff do not discriminate against individuals who are deaf and hard of hearing;

d. To promulgate and comply with procedures to ensure that the Defendant will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing in all services offered by the Defendant;

e. To promulgate and comply with procedures to ensure that the Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that state that the Defendant will provide sign language interpreters and/or other

    communication services that ensure effective communication with deaf or hard of hearing persons;

  f. Award compensatory damages to Shalan;

  g. Award reasonable costs and attorneys' fees; and

  h. Award any and all other relief that may be necessary and appropriate.

**COUNT II**
**TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181 et seq.**

74. Shalan incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

75. Shalan's hearing loss substantially limits his major life activities, including his ability to effectively communicate.

76. Shalan is an individual with a disability under Title III of the Americans with Disabilities Act.

77. Plaintiff meets the essential eligibility requirements for Defendant's services at all times material hereto.

78. Shalan will likely return to Metro premises in the near future and will be harmed by Metro's discriminatory policies and procedures.

79. Metro violated Title III of the Americans with Disabilities Act in numerous ways, including discriminatory actions which occurred when Metro:

  a. Failed to maintain policies and procedures to ensure compliance with Title III of the Americans with Disabilities Act, specifically policies that provide equal access and effective communication to individuals with disabilities, 28 C.F.R. § 36.303(a)(2010);

b. Failed to ensure that communications with Plaintiff was as effective as communications with non-disabled patients, 28 C.F.R. § 36.303(a) (2010);

c. Failed to provide auxiliary aids and services, including a qualified interpreter, and to modify policies and procedures to prevent discrimination against Plaintiff, 28 C.F.R. § 36.303(a) (2010), 28 C.F.R. § 36.302(a) (2010);

d. Excluded Plaintiff from services of the public entity and denied Plaintiff the benefit of these services due to his disabilities, 28 C.F.R. § 36.202(a) (2010).

80. Metro had knowledge of its obligations under the Americans with Disabilities Act and was deliberately indifferent to the rights of Shalan.

81. Metro knew that Shalan would be harmed by its failure to provide an interpreter.

**WHEREFORE**, Shalan respectfully prays that this Court enter judgment in his favor to declare that the Defendant's actions and inactions violated Title III of the Americans with Disabilities Act, to permanently enjoin the Defendant from any practice, policy, and/or procedure which will deny Plaintiff equal access to and benefit from Defendant's services, or which deny Plaintiff effective communication with the Defendant, award further enforcement and other equitable relief to ensure that such training and policies are maintained in the future, and to award reasonable attorneys' fees and costs, and any and all other relief that may be necessary and appropriate.

Respectfully Submitted,

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)
Peter C. Mapley (0092359)
Sobel, Wade & Mapley, LLC
2460 Fairmount Boulevard, Ste 314
Cleveland, Ohio 44106
T: (216) 223-7213
F: (216) 223-7213
sobel@swmlawfirm.com
mapley@swmlawfirm.com

*Attorneys for Plaintiff Jamal Shalan*

## **JURY DEMAND**

Plaintiff Jamal Shalan demands a trial by jury by the maximum number of jurors permitted.

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)

*Attorney for Plaintiff Jamal Shalan*